# UNITED STATES DISTRICT COURT

## Northern District of California

### San Francisco Division

| | |
|---|---|
| ALPHONSO GUERRERO, IRENE GUERRERO, A.G., a minor by and through his guardian ad litem ALPHONSO GUERRERO, JEFF MCDOUGAL, CINDY MCDOUGALL, A.M., a minor by and through his guardian ad litem, JEFF MCDOUGAL, CLAY PLUMMER, JENNIFER PLUMMER, J.P., a minor by and through her guardian ad litem CLAY PLUMMER, JOHN REYNOLDS, CINDY REYNOLDS, P.R., a minor by and through her guardian ad litem JOHN REYNOLDS, PHILIP RODRIGUEZ, JENNIFER RODRIGUEZ, R.R., a minor by and through her guardian ad litem PHILIP RODRIGUEZ, TANIA STREETE, B.S., a minor by and through his guardian ad litem TANIA STREETE, K.G., a minor by and through his guardian ad litem SYLVIA GALLEGOS, L.L., a minor by and through his guardian ad litem JIM LARK,<br><br>Plaintiffs,<br><br>v.<br><br>BRENTWOOD UNION SCHOOL DISTRICT, DINA HOLDER, LAURI JAMES, MERRILL GRANT, MARGARET KRUSE, MARGO OLSON, JEAN ANTHONY and DOES 1-30,<br><br>Defendants.<br>_____/ | No. C 13-03873 LB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR APPROVAL OF THE SETTLEMENT OF MINORS' CLAIMS**<br><br>[Re: ECF No. 45] |

C 13-03873 LB
ORDER

## INTRODUCTION

In this case, eight minor children and the parents of six of them—Alphonso Guerrero, Irene Guererro, A.G. (through his guardian ad litem Alphonso Guerrero), Jeff McDougal, Cindy McDougal, A.M. (through his guardian ad litem Jeff McDougal), Clay Plummer, Jennifer Plummer, J.P. (through his guardian ad litem Clay Plummer), John Reynolds, Cindy Reynolds, P.R. (through her guardian ad litem John Renolds), Philip Rodriguez, Jennifer Rodriguez, R.R. (through her guardian ad litem Philip Rodriguez), Tania Streete, B.S. (through his guardian ad litem Tania Streete), K.G. (through his guardian ad litem Sylvia Gallegos), and L.L. (through his guardian ad litem Jim Lark) (collectively, "Plaintiffs")—sued Brentwood Union School District ("BUSD"), Dina Holder, Lauri James, Merrill Grant, Margaret Kruse, Margo Olson and Jean Anthony (collectively, "Defendants") under 42 U.S.C. § 1983 for violations of their Fourth and Fourteenth Amendment rights and other state laws. Complaint, ECF No. 1.[1] On December 27, 2013, before any formal mediation was conducted, the parties' counsel and representatives from Northern California Relief, the insurance carrier for BUSD met and agreed to recommend to their clients a joint settlement of $8 million to be paid to Plaintiffs. Defendants agreed to cooperate with Plaintiffs in the event they elected a structured settlement for a portion of the settlement funds. The BUSD board approved the proposed settlement on January 22, 2014. Plaintiffs have agreed to this settlement.

Now, Plaintiffs ask the court to approve the settlement of the minors' claims. Motion, ECF No. 45. Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument and vacates the April 17, 2014 hearing. For the reasons stated below, the court **GRANTS** Plaintiffs' motion.

## STATEMENT

Plaintiffs filed their complaint against Defendants on August 21, 2013. The complaint alleges claims against Ms. Holder under 42 U.S.C. § 1983 for violating the minor plaintiffs' rights of under the Fourth and Fourteenth Amendment and the adult plaintiffs' rights under the Fourteenth

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

Amendment's substantiative due process clause. The complaint also alleges that the BUSD administrator defendants were deliberately indifferent to the risk that Plaintiffs would suffer violations of their constitutional rights. The complaint also alleges violations of the Americans with Disabilities Act and the Rehabilitation Act for creating of a hostile educational environment. *See generally* Complaint, ECF No. 1.

Plaintiffs allege that Ms. Holder, who was the children's pre-kindergarten teacher, subjected the children to regular acts of child abuse or neglect and observed acts of child abuse or neglect being inflicted on other special needs children in their classroom, including, but not limited to, yelling, swearing and inappropriately aggressive physical contact. The children each suffered physical and emotional injuries as a result. Plaintiffs also allege that Ms. James, who is the principal of the school, and BUSD responded to the incident improperly. *See id*. at 2-4, ¶¶ 10-24.

The parties have now agreed to recommend to their clients at settlement of $8 million to be paid to Plaintiffs. On March 13, 2014, after approval by the BUSD board, Plaintiffs filed the motion now before the court, asking the court to approve the settlement of the minors' claims. Motion, ECF No. 45. Defendants filed statements of non-opposition to Plaintiffs' motion. Statements, ECF Nos. 46-47.

## ANALYSIS

### I. LEGAL STANDARD

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). "Rule 17(c) provides, in relevant part, that a district court 'must appoint a guardian ad litem — or issue another appropriate order — to protect a minor or incompetent person who is unrepresented in an action.'" *Id*. (quoting Fed. R. Civ. P. 17(c)). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Id*. (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)).

As the Ninth Circuit has recently made clear, in cases involving the settlement of a minor's

federal claims[2], district courts should "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases," and should "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel — whose interests the district court has no special duty to safeguard." *Id*. at 1181-82 (citing *Dacanay*, 573 F.2d at 1078).

## II. DISCUSSION

### A. Terms and Allocation of Settlement.

Plaintiffs have agreed that each family shall share equally in the collective settlement funds. Plaintiffs' consultants have found that each of the children has suffered psychological harm and have recommended that each child and each family receive a similar amount of therapy. Therefore, Plaintiffs contend that allocating $1,000,000 to each family is appropriate. The guardians for plaintiffs A.M., J.P., P.R., R.R., and B.S. (Jeff McDougal, Clay Plummer, John Reynolds, Philip Rodriguez, and Tania Streete, respectively) are also plaintiffs and have agreed to allocate 80% of the settlement proceeds to their children and 20% in total to themselves. Therefore, A.M., J.P., P.R., R.R. and B.S. will receive $800,000 in gross proceeds and their parents will receive $200,000 in gross proceeds. In those instances where both parents of a child are plaintiffs, the parents shall share the $200,000 gross proceeds. As described in detail in his declaration, Alphonso Guerrero, as guardian for A.G., has allocated $700,000 to A.G. and $300,000 to himself and Irene Guerrero, so that Alphonso Guerrero and Irene Guerrero, who currently rent a home, can make a down payment on another home in Brentwood, California and therefore provide greater space and stability for A.G. *See* Guerrero Declaration, ECF No. 50. Sylvia Gallegos and Jim Lark, the respective parents of K.G. and L.L., are not Plaintiffs in this action, so K.G. and L.L. will receive $1,000,000 in gross proceeds. *See* Motion, ECF No. 45 at 5-6, ¶¶ 25-29.

---

[2] The Ninth Circuit did not express a view on the proper approach for a federal court to use when sitting in diversity and approving the settlement of a minor's state law claims. *Robidoux*, 638 F.3d at 1179 n.2. Plaintiffs bring claims under both federal and state law. Nevertheless, the court will look to the Ninth Circuit's guidance with respect to all of their claims.

1   With respect to attorney's fees, Plaintiffs' counsel are to receive 25% of each Plaintiff's

2   recovery. *Id*. at 6, ¶ 30.  As for costs, a proportionate share of the costs will be allocated to the

3   recoveries of Alphonso Guerrero, Jeff McDougal, Clay Plummer, John Reynolds, Tania Steele,

4   K.G., and L.L.  As a result, $5,898.70 will be applied to the recovery of L.L.  An additional $251.76

5   in costs were incurred for translation costs at the examination of K.G. by the child psychologist and

6   resulted in total litigation costs of $6,150.46 to be applied to K.G.'s recovery. *Id*. at 6, ¶ 29

7   Thus, after attorney's fees and costs are deducted, A.M., J.P., P.R., R.R., and B.S will receive net

8   proceeds of $600,000, A.G. will receive net proceeds of $562,500, L.L. will receive net proceeds of

9   $744,101.30, and K.G. will receive $743,849.54. *Id*. at 6-7, ¶¶ 31-33.

10  Upon consideration of the facts of the case, the children's claims, the terms of the settlement, and

11  recoveries in similar cases, the court finds the settlement to be in the best interest of all of the parties

12  and the amount of money that the children will receive to be fair and reasonable.

13  **B. Special Needs Trust**

14  Alphonso Guerrero, Jeff McDougal, Clay Plummer, John Reynolds, and Tania Steele request

15  that some the net proceeds for A.M., J.P., P.R., R.R., and B.S. be placed into a special needs trust

16  pursuant to 42 U.S.C. §1396p(d)(4)(A) and California Probate Code §3600, et seq.  (As described in

17  more detail below, Alphonso Guerrero, Jeff McDougal, Clay Plummer, John Reynolds, and Tania

18  Steele intend to use the rest of their children's net proceeds to purchase single-payment deferred

19  annuities for A.M., J.P., P.R., R.R., and B.S.)  Alphonso Guerrero, Sylvia Gallegos, and Jim Lark

20  request that all of the net proceeds for A.G., K.G. and L.L. be placed in a special needs trust. *Id*. at

21  7, ¶ 34.

22  The children all have autism, a disability that under the California Probate Code constitutes a

23  substantial handicap. *Id.* ¶ 36.  The settlement contemplates a special needs trust for each child

24  based on the determination that each child meets all requirements of Probate Code § 3604(b): (A)

25  each has a disability that substantially impairs his or her individual ability to provide for his or her

26  own care or custody and that constitutes a substantial hardship; (B) each child's individual special

27  needs will not be met without the trust; and (C) the money to be paid to the trust does not exceed the

28  amount that appears reasonably necessary to meet those special needs. *Id.* ¶ 35.  The essential needs

1  that the trust will provide include personal care assistance, independent living services, and medical
2  services and other palliative care that will not be met or available without the special needs trust. *Id.*
3  ¶ 37.

4  Plaintiffs request that the following amounts be allocated to Plaintiffs' special needs, as follows:
5  (a) $562,500 to A.G., (b) $150,000 to A.M., (c) $300,000 to J.P., (d) $400,000 to P.R., (e) $400,000
6  to R.R., (f) $300,000 to B.S., (g) $743,849.54 to K.G., and (h) $744,101.30 to L.L. *Id.* at 9-10, ¶ 44.

7  Given Plaintiffs' long-term care and therapeutic needs, the future disability-related costs of care
8  will be significant. *Id.* ¶ 38. Plaintiffs attached the proposed special needs trusts, which comply
9  with the requirements of California Rule of Court 7.903, including (1) no no-contest provisions, (2)
10 court approval for modifications and revocations, (3) clear identification of the trustee and persons
11 with authority to direct the trustee to make disbursements, (4) prohibition of investments by the
12 trustee other than those permitted by Probate Code § 2574, (5) bond posting by the trustees and
13 persons with authority in the amount required by the Probate Code, (6) filing by the trustee of the
14 accounts and reports required by the Probate Code, (7) court approval for changes in trustees and a
15 court order appointing any successor trustee; and (8) compensation of the trustee in just and
16 reasonable amounts to be fixed and allowed by the court. *Id.* ¶ 40.

17 Four of the trusts will be self-administered, meaning that the parents or family members will be
18 acting as trustee. Jeff and Cindy McDougal will administer the trust for A.D.; John and Cynthia
19 Reynolds will administer the trust for P.R.; Jennifer Plummer and Clayton Plummer will administer
20 the trust for J.P.; and Jennifer Rodriguez and Thomas Beck will administer the trust for R.R. All of
21 the trustees for the self-administered trusts have been pre-approved for bond. *Id*. ¶ 42.

22 Christie Gough of Tutela Services, Inc., will serve as trustee for A.G. and L.L. *Id.* ¶ 43. Herb
23 Thomas of Herb Thomas & Associates will serve as trustee for B.S. *Id.* Pat McVey-Ritsick will
24 serve as trustee for K.G. *Id.* All three of these trustees are licensed professional fiduciaries and
25 members of the Professional Fiduciaries Association of California. *Id.*

26 The trusts were drafted by Jennifer Steneberg, an estate planning attorney at the Dale Law Firm
27 who specializes in developing estate plans that involve persons with disabilities. *Id*. at 9, ¶ 41. The
28 trusts comply with California Probate Code § 3604. *Id.* The cost of drafting the trusts is $2,000 per

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

trust, and that amount will be deducted from each special needs trust. *Id*. at 10, ¶ 45.

**C. Structured Settlements**

Plaintiffs also request approval of the purchase of a single-payment deferred annuity for A.M., J.P., P.R., R.R., and B.S. *Id.* ¶ 46. The guardians ad litem met with specialists and picked payment schedules that best fit the needs of each minor. *Id.*. I-M, ECF No. 45. The cost to Defendants of the proposed structured settlement for plaintiffs is as follows: (a) $300,000 for B.S., (b) $300,000 for J.P., (c) $450,000 for A.M., (d) $200,000 for P.R., and (e) $200,000 for R.R.. *Id. ¶* 48. The company issuing the single premium deferred annuity is Berkshire Hathaway Life Insurance Company of Nebraska with a qualified assignment to BHG Structured Settlements, Inc. *Id.* ¶ 49. The payment obligations are guaranteed by two separate insurance companies. *Id.* Berkshire Hathaway has high ratings from A.M. Best (A++) and Standard and Poor's (AA+). *Id.* Exhibits I through M to Plaintiffs' motion set forth a detailed schedule of payments to A.M., J.P., P.R., R.R., and B.S., resulting as follows:

| Plaintiff | Guaranteed Total Payments | Expected Total Payments |
|---|---|---|
| B.S. | $ 734,180 | $ 1,936,936 |
| J.P. | $ 706,817 | $ 1,550,018 |
| A.M. | $ 1,258,768 | |
| P.R. | $ 525,000 | |
| R.R. | $ 442,588 | |

The total payments to A.M., J.P., P.R., R.R., and B.S. vary as a result in the differences in timing and amounts of the periodic payments. *Id.* ¶ 47. For B.S. and J.P., the payments are for the life of each of them, with guaranteed payments of varying lengths. *Id.* The computation of "expected Total Payments" is based on the life expectancies of B.S. and J.P. *Id*. For the A.M., P.R., and R.R., all of the payments are guaranteed for a term of years. *Id.*

**CONCLUSION**

The court grants the motion to approve the settlement on behalf of the minor plaintiffs and orders the following:

1. The total settlement is $8,000,000 divided into eight allocations of $1,000,000. The

allocations for the children are as follows: (a) $800,000 each for A.M., J.P., P.R., R.R., and B.S. (with the $200,000 balance from each $1,000,000 allocation going to their parents); (b) $700,000 for A.G. (with the $300,000 balance going to his parents); and (c) $1,000,000 for K.G. and L.L.  Each minor plaintiff will pay 25% of their allocations in attorney's fees, which means that K.G. and L.L. pay $250,000, A.G. pays $175,000, and the remaining minor plaintiffs pay $200,000 each.  K.G. and L.L. also must pay a proportionate share of costs in the amount of $6,150.46 and $5,898.70 respectively.

2. The court approves the special needs trusts for the children that are attached as Exhibits A through H to Plaintiffs' motion.  The court directs the guardian ad litem for each child to execute the special needs trust for his or her child.

3. The court orders that the trustees post the following bond amounts: (a) $173,250 by the trustee of the special needs trust for A.M., (b) $346,000 by the trustees of the special needs trusts for J.P. and B.S. for each trust, (c) $462,000 by the trustees of the special needs trusts for P.R. and R.R. for each trust, (d) $606,000 by the trustee of the special needs trust for A.G., and (e) $924,000 by the trustees of the special needs trusts for L.L and K.G for each trust.

4. Venue for on-going oversight of the special needs trusts established by this order shall be with the Contra Costa County Superior Court, and the trustees of the trusts shall file an account and report with that Court in the manner and frequency called for by California Probate Code.

5. The court orders that the following sums be allocated to the special needs trusts of plaintiffs: (a) $562,500 for A.G., (b) $150,000 for A.M., (c) $300,000 for J.P., (d) $400,000 for P.R., (e) $400,000 for R.R., (f) $300,000 for B.S., (g) $743,849.54 for K.G., and (h) $744,101.30 for L.L.

6. Attorney's fees in the amount of $2,000 shall be paid from each special needs trust (for a total of $16,000) to the Dale Law Firm for preparation of the special needs trusts for the children.

7. The remainder of the settlement funds must be used to purchase the single premium deferred annuities with payments as set forth in Exhibits I through M.

**IT IS SO ORDERED.**

Dated: April 4, 2014

_____
LAUREL BEELER
United States Magistrate Judge